Edward GATHRIGHT, Plaintiff,

v.

**CITY OF PORTLAND and Pioneer Courthouse Square of Portland, Inc., Defendants.**

Civil No. 03–130–HA.

United States District Court, D. Oregon.

April 6, 2004.

Herbert G. Grey, Kelly E. Ford, Beaverton, OR, John M. Lotz, Aliso Viejo, CA, for Plaintiffs.

Harry M. Auerbach, City Attorney's Office, Portland, OR, for Defendants.

## AMENDED OPINION AND ORDER[1]

HAGGERTY, District Judge.

The facts of this case have been throughly reviewed in the court's order granting plaintiff's Motion for a Preliminary Injunction (Doc. # 30) and need not be repeated at length here. Plaintiff brought this case in January 2003, alleging violations of his civil rights against defen-

---

1. The Opinion issued on March 10, 2004, is amended pursuant to a meritorious Motion for Clarification filed by plaintiff. The Conclusion of this Opinion is amended so as to be consistent with the Opinion's analysis that recognizes that defendants are permanently enjoined from removing plaintiff or others similarly situated from either inside or outside of the boundaries established by an event permit unless there is probable cause to believe that a duly enacted statute or ordinance has been violated by the person or persons.

dants the City of Portland and Pioneer Courthouse Square of Portland, Inc. In April 2003, the court granted plaintiff's Motion for a Preliminary Injunction, enjoining defendants from enforcing PCC 20.08.060 [2] and from ejecting plaintiff from public events unless there is probable cause to believe plaintiff has violated a valid statute or city ordinance. This decision was appealed and the Ninth Circuit affirmed (Doc. # 40). On November 20, 2003, plaintiff filed a Motion for Partial Summary Judgment Granting a Permanent Injunction (Doc. # 42). On December 16, 2003, defendants filed a Cross–Motion for Summary Judgment (Doc. # 45). Plaintiff now requests that this court make the preliminary injunction permanent. For the reasons provided below, plaintiff's motion is granted and defendants' motion is denied.

In *City of Portland v. Lee,* Multnomah County Circuit Ct. No. 9907–46965 (1999), Judge Kantor held that PCC 20.08.060 was facially invalid under the First Amendment because it restricted a significant amount of protected speech. The City did not appeal the decision and has not repealed the ordinance or enacted a replacement. Under *Lee,* the City cannot prohibit speech in a public park absent a violation of a state statute or a municipal ordinance. Plaintiff asserts that despite Judge Kantor's proclamation that PCC 20.08.060 is unconstitutional, the City has used the ordinance as the basis for excluding plaintiff. Defendants contend that their authority for excluding plaintiff did not stem from PCC 20.08.060, but from the constitutional rights of permit holders to control the content of the message presented at their event. Defendants advance no further argument for why they should not be permanently enjoined from enforcing PCC 20.08.060. For the reasons provided in the

Opinion and Order dated April 23, 2003, plaintiff's motion for a permanent injunction is granted.

## QUESTION PRESENTED

The question that remains before this court is whether the constitutional rights of private permittees holding events in public forums may compel the government to enforce the decisions of permittees to exclude individuals from the event and its periphery.

Defendants assert they are entitled to summary judgment because as a matter of law, private persons who use City parks under permits possess a First Amendment right to control the messages delivered at their events. As such, defendants' conduct in enforcing the decisions of the permit holders as to which speech will be allowed at their events does not violate plaintiff's own First Amendment rights. Plaintiff does not dispute this contention in the abstract, but argues that the permittees' First Amendment rights are not superior to those of an attendee, such as plaintiff, who was simply at the events and was not otherwise disrupting the events or violating the law.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not proper if there are disputes over facts that may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**2.** PCC 20.08.060 is titled "Unlawful Interference" and prevented "any person" from "un-

reasonably" interfering with a permittee's use of a park.

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. Assuming there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and (3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Summary judgment is inappropriate when different ultimate inferences can be reached. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial does not need conclusive resolution in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the claimed factual dispute to require a trier of fact to resolve the parties' differing versions of the truth at trial. *Id.* At the summary judgment stage, the judge does not weigh conflicting evidence or decide credibility. Those determinations are the province of the fact-finder at trial. *Id., see also Abdul–Jabbar v. Gen. Motors Corp.,* 85 F.3d 407, 410 (9th Cir.1996) (on a motion for summary judgment, the court does not weigh the evidence or determine the truth of the matter asserted, but decides only whether there is a genuine issue for trial).

To be entitled to a permanent injunction, the party seeking the injunction must actually succeed on the merits. *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). The party must also show that there is no adequate remedy at law. *Continental Airlines v. Intra Brokers, Inc.,* 24 F.3d 1099, 1102 (9th Cir.1994). If there is the possibility of future wrongful conduct, a legal remedy is inadequate. *Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 564 (9th Cir.1990).

## ANALYSIS

The Supreme Court has recognized that the First Amendment rights of permittees to use a public forum includes the right to exclude speech with which the permittee disagrees. *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, et al.,* 515 U.S. 557, 558, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). In *Hurley,* the Supreme Court held that Massachusetts may not "require private citizens who organize a parade to *include among the marchers* a group imparting a message the organizers do not wish to convey." *Id.* at 559, 115 S.Ct. 2338 (emphasis added). The Massachusetts law would have forced parade organizers to allow a gay, lesbian, and bisexual group (GLIB) to march in the parade. The Court reasoned that "the fundamental rule of protection under the First Amendment [is] that a speaker has the autonomy to choose the content of his own message." *Id.* Similarly, the Sixth Circuit has held that a private political organization holding a rally in a public commons for one politi-

cal candidate may prevent attendees from participating in the rally as members of the audience if they are wearing a rival political candidate's campaign button. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 199 (6th Cir.1996).

Defendants rely on *Hurley* and *Sistrunk* in support of their proposition that the City has a constitutionally-mandated interest in protecting the First Amendment rights of the permittees to oversee over the content of the messages expressed at the permittees' events, even at the expense of other individuals' rights. While defendants are correct in that permittees do have the constitutional right to determine the content of speech that will be expressed at their event, this right does not extend to individuals who are *not* participants in the event. The Court in *Hurley* repeatedly referred to GLIB as "participants." *Id.* at 570, 573, 115 S.Ct. 2338 (the Court emphasizes that GLIB wanted to participate "as a unit in the parade ... for the very purpose of marching in it...."). The Court stated that because "every participating unit affects the message conveyed by the private organizers," allowing GLIB to participate in the parade "essentially requir[ed] [the permittees] to alter the expressive content of their parade." *Id.* at 573, 115 S.Ct. 2338.

There is a distinction between participating in an event and being present at the same location. Merely being present at a public event does not make one part of the event organizer's message for First Amendment purposes. The D.C. Circuit Court of Appeals noted this distinction in *Mahoney v. Babbitt*, 105 F.3d 1452 (D.C.Cir.1997), wherein the court reversed the district court's order allowing event organizers to bar individuals from engaging in sign-bearing protests on the side-walk during an inaugural parade. The court stated,

> All [the protesters] seek is the First Amendment-protected right to stand on the sidewalk and peacefully note their dissent as the parade goes by.... No case called to our attention says that anyone has ever successfully established the power of a government to so suppress opposing viewpoints; indeed, in few cases has the government of the United States even tried.

*Id.* at 1456–67. The decision in *Mahoney* underscores that there is an important constitutional difference between forcing a permittee to include a dissenter as a participant in a defined event where the public will reasonably conclude the dissenter's message is part of or sanctioned by the permittee, and excluding a dissenting speaker who is simply located at an event either to protest the permittee's message or to take advantage of a crowd to proselytize.

Contrary to the facts in *Hurley*, plaintiff was not a participant in the permittees' events. Construing the facts in the light most favorable to the plaintiff, on at least three occasions, plaintiff was outside of the premises of the event.[3] Furthermore, the act of including messages contrary to the private event organizers' wishes in both *Hurley* and *Sistrunk* would have necessarily changed the organizers' messages. Attendees at the parade would have assumed that the permittees in *Hurley* sympathized or endorsed the views presented by the gay marchers. *Id.* at 574–75, 115 S.Ct. 2338. In *Sistrunk*, the event organizers' message that their candidate would win would have been diminished if rival political buttons were displayed by attendees. *Sistrunk*, 99 F.3d at 199.

**3.** Plaintiff contends that his activities were prohibited when he was on the sidewalks within Waterfront Park, the traffic island in Naito Parkway, and the sidewalks around Pioneer Courthouse Square.

However, in this case, there was no danger that any member of the public would attribute plaintiff's pietistic messages to the private organizers of the events in the City parks. Plaintiff's preaching was often unrelated to or directly contrary to the ideas being expressed at these events. Going to an event to preach and carry signs bearing a religious message is distinct from attempting to participate in a parade or display a controversial button at a political rally. As in *Mahoney*, if plaintiff is a dissenting speaker on the sidewalk, no one can be confused into believing his message is part of that intended by the permittee, unlike those who are actually participating in the event. *Mahoney*, 105 F.3d at 1456–57. Thus, plaintiff was not infringing on the permittees' fundamental right of protection under the First Amendment to have the "autonomy to choose the content of [their] own message." *Hurley*, 515 U.S. at 573, 115 S.Ct. 2338.

Waterfront Park and Pioneer Courthouse Square are public parks and are therefore "quintessential public forums." *Grossman v. City of Portland*, 33 F.3d 1200, 1204 (9th Cir.1994). When a private party obtains an event permit to use these public forums, the issuance of the permit does not transform their existence as a public forum. Despite the issuance of a permit to a private party to hold an event in a public forum, the public forum still receives heightened protection from free speech restrictions. *See e.g. United States v. Grace*, 461 U.S. 171, 180, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) ("Congress ... may not by its own *ipse dixit* destroy the 'public forum' status of streets and parks which have historically been public forums ....") (quoting *United States Postal Serv. v. Greenburgh Civic Ass'ns.*, 453 U.S. 114, 133, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981)).

■ Although Waterfront Park and Pioneer Courthouse Square remain traditional public forums at all times, permittees should still be able to conduct their events free from unlawful disruptive interference. Thus, defendants have the authority to regulate plaintiff's simultaneous First Amendment activities through reasonable time, place, and manner restrictions. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). However, any regulation must be content-neutral, narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels of communication. *Gerritsen v. City of Los Angeles*, 994 F.2d 570, 577 (9th Cir.1993).

■ The parties agree that defendants' policy of allowing private parties to determine whose speech may be heard at their events is content-neutral and that defendants' application of this policy to plaintiff in this case was content-neutral. It is also agreed that defendants' enforcement policy serves the significant governmental interest in protecting the free speech rights of people and organizations who have obtained permits to use a public park. Thus, the remaining question is whether or not defendants' enforcement scheme is narrowly tailored.

The court holds that the City may lawfully exclude attendees of ordinary public events held on public property only if they violate a valid statute or ordinance. Under the City's policy, there is no certainty that individuals are ejected because they violated a valid statute or ordinance. The criminal trespass statute under which plaintiff was purportedly excluded defines trespass as failing to honor a permittee's "lawful direction" to leave an event, but fails to define "lawful." O.R.S. 164.245; 164.205(3)(b). A permittee's direction to leave a public event would be "lawful" only if plaintiff has violated a valid statute or ordinance. However, the statute fails to provide the officer charged with enforcing the criminal trespass statute or the per-

mittee any guidance as to what constitutes a "lawful" reason that they may eject attendees from their events based on the attendees' speech. Accordingly, the court is compelled to conclude that the City's policy is not narrowly tailored to serve its interest in promoting the permittee's ability to hold events without undue disruption.

Defendants assert that their policy of leaving it to the permittees' discretion to determine which speech to allow at their events and enforcing these decisions should be construed as narrowly tailored to defendants' interest because it limits only that speech that the permittees have a right to exclude. This argument is without merit. The City does nothing to ensure that individuals are ejected solely because their speech is disruptive. For example, a private permittee may issue rules for its event for the City to enforce that expressly condition attendance on speech that conforms to its own peculiar rules, regardless of whether an individual is being disruptive.

In addition, under defendants' view, a private permittee may direct someone to leave who displays or voices a message with which the permittee disagrees. Such arbitrary discretion and enforcement is not narrowly tailored. Under defendants' enforcement scheme, the police are given no tools with which to evaluate whether a party may be excluded from an event. It cannot be left up to the discretion of the permittees to arbitrarily determine whether specific conduct is disruptive. Neither the criminal trespass statute nor PCC 20.08.060 provides the guidance needed to comport defendants' enforcement scheme with the First Amendment.

## CONCLUSION

The parties dispute whether plaintiff was in fact arrested or excluded for conduct that occurred both within and without the boundaries of areas under the control of the event permit holders. If defendants arrested or excluded plaintiff while he was speaking outside of the event boundaries or if defendants arrested or excluded plaintiff while he was within a protected public forum, then defendants may have violated plaintiff's First Amendment rights unless plaintiff violated a duly enacted law or ordinance. However, there is no guidance in either the criminal trespass statute or PCC 20.08.060 as to what constitutes disruptive behavior that would entitle an event permit holder to lawfully arrest or exclude plaintiff.

Defendants are permanently enjoined from enforcing PCC 20.08.060. In addition, defendants are permanently enjoined from removing plaintiff and others similarly situated from an area outside or inside of the boundaries under the control of an event permit unless there is probable cause to believe that they have violated a duly enacted statute or ordinance. Accordingly, plaintiff's Motion for Partial Summary Judgment Granting a Permanent Injunction (Doc. # 42) is GRANTED and defendants' Motion for Summary Judgment (Doc. # 45) is DENIED.

IT IS SO ORDERED.